UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMAR ALLI,

                        *Plaintiff*,

-against-

CITY OF NEW YORK, et. al.,

                        *Defendants*.

1:21-cv-04866 (ALC) (SN)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Umar Alli brings this pro se action alleging violations of federal law against the City Of New York, Officer Sylla, Officer Lewis, Officer Galuezvskiy, Officer Ferraro, Captain Moise, and Former Chief Jennings in their individual and official capacities (collectively, "Defendants"), alleging excessive force and municipal liability claims. ECF No. 2, Compl. Defendants now move for summary judgment. ECF No. 45.

      After careful review, Defendants' Motion, ECF No. 45, is **GRANTED** in full. The Court finds the individual officers are entitled to qualified immunity on Plaintiff's excessive force claims.

## BACKGROUND

### I. Statement of Facts[1]

      On August 31, 2020, Plaintiff was in Department of Corrections custody, and housed in Manhattan Detention Center 9 South, Cell 5. ECF No. 47, Def.'s 56.1 at ¶ 2. At approximately 5:00 pm, Officers Lewis, Galuevskiy, and Sylla of the Emergency Services Unit ("ESU") approached Plaintiff's cell. A sheet covered the window of Plaintiff's cell. The officers contend they were dispatched to take Plaintiff to the clinic. ECF No. 48 at 10. Plaintiff alleges they

---

[1] For the purposes of this motion, the facts are drawn from the Complaint and presumed to be true. The Court also draws on surveillance footage appended to Defendants' motion for summary judgment, ECF No. 46-3, Exhibit C.

1

approached him to instruct him to remove the sheet from his cell window. *Id.* At no time during the encounter did Defendants enter his cell beyond the entryway. Captain Moise supervised the incident. Def.'s 56.1 at ¶ 41. Officer Ferraro and Chief Jennings did not witness the encounter. *Id.* at ¶¶ 42-44; Compl. at 17.

Plaintiff opened the cell door, stood in the entryway, and spoke to the officers. He appeared visibly agitated and gesticulated as he spoke. Plaintiff addressed his "concerns of illegal procedures" with the officers. ECF No. 58 at 1. Plaintiff then went inside his cell and outside of camera view. He quickly returned to the entryway, continued to speak forcibly with the officers and gesticulated, clenching his right hand into a fist and striking it into his left hand. Officer Sylla interpreted Plaintiff's words and actions as "a sign of aggression towards staff to harm someone." ECF No. 46-5, Exhibit E, Use of Force Report at 3. Plaintiff again went inside his cell and an unidentified officer handed Defendants a pair of crutches, which they placed to the right of the cell door.

Plaintiff then limped out of the cell. "Plaintiff Alli motioned and requested officers back away so he could obtain his crutches in which was [sic] needed to walk. Officer Sylla then initiated the use of force by assault." ECF No. 58 at 1. As the surveillance video depicts, Plaintiff clearly exited his cell and pushed Officer Sylla out of his way. "Officer Sylla then tried to push Mr[.] Alli in the cell to assault him off camera, a minor struggle commenced[.]" *Id.* at 1.

The entire incident is captured on video, and Plaintiff's version is not corroborated by the footage. Rather, Officers Sylla, Lewis, and Galuevskiy restrained Plaintiff after he pushed Officer Sylla without warning. As they made contact, Plaintiff punched the left side of Officer Sylla's face with his right fist. ECF No. 46-5 at 3. Defendants first pushed Plaintiff against the wall, grabbed his limbs, and then took him to the ground. Plaintiff stated that once he was on the

floor, he "did not actively resist." ECF No. 58 at 1. Yet in the footage, Plaintiff continued to move his arms and legs while on the floor.

Plaintiff also claims that Officer Sylla used metal gloves to assault him and that Officer Sylla applied facial blows and made head and neck contact *Id.* at 2. The Court notes that in his Complaint, Plaintiff initially simply claimed Officer Sylla sexually assaulted him, and did not furnish further facts to support this claim. Compl. at 17. Plaintiff elaborated on this claim in his deposition. "Officer Sylla inserted his hands inside [his] pants and inside [his] rectum," and also "put a finger or an unknown object inside [his] pants touching [his] genitals and [his] rectum." ECF No. 46-2, Exhibit B, Plaintiff's Deposition at 70:13 – 70:15; 72:21 – 73:16. After viewing the footage, Plaintiff now contends it was actually Officer Lewis who sexually assaulted Plaintiff by "sneaking his hand in plaintiff[']s pants touching his private area." ECF No. 58 at 2, 5. "Even after Plaintiff was secured, Officer Sylla continued to use unwarranted and excessive force. And whisper [sic] death threats[.]" *Id.*; Compl. at 10, 17.

None of these allegations are corroborated by the video. Rather, Defendants continued to hold Plaintiff's limbs together. Officer Galuezvskiy hugged Plaintiff's legs together as Officer Sylla held Plaintiff's torso. Def's 56.1 at ¶¶ 25-26. When Plaintiff slid down to the ground, Defendants turned him onto his stomach and Plaintiff continued to move his arms and legs until Defendants secured his limbs with restraints. *Id.* at ¶¶ 25-28. Officer Lewis applied restraints on Plaintiff's wrists and Captain Moise assisted him in applying leg irons. *Id.* at ¶¶ 25, 27, 29. When the officers helped Plaintiff to his feet, Plaintiff had blood on his face. Plaintiff alleges his facial injuries are due to Officer Sylla punching him on the head and "bashing" his head into the floor. ECF No. 48 at 15; Pl.'s Dep., at 69:05 – 70:01. Officer Sylla disputes this, and alleges Plaintiff "began to repeatedly hit his face on the ground. [I] than grab [sic] said inmate head to stop him

from harming himself" and Plaintiff continued to move his head. ECF No. 46-5 at 3. The video does not show Officer Sylla or any officer punch Plaintiff. Once on his feet Plaintiff leaned against a metal wall and spoke to Defendants before they transported him to the clinic. Plaintiff was then referred to Bellevue Hospital. Def's 56.1 at ¶ 35.

Plaintiff's medical records at the clinic memorialize that he reported he was assaulted and had multiple abrasions to his face. ECF No. 46-6, Exhibit F, Excerpts of Plaintiff's Corizon Health Services Medical Records at 3. Bellevue Hospital staff conducted a CT scan, diagnosed Plaintiff with a "minimally displaced right nasal bone fracture", and noted Plaintiff otherwise presented as normal. Def's 56.1 at ¶¶ 36-40. As a result of the incident, Plaintiff reported his nose was broken and he has difficulty breathing in and out of his left nostril. Pl.'s Dep., 26:17 – 26:21.

## II.     Procedural History

Plaintiff filed his complaint on June 1, 2021 against the City of New York, Officer Sylla, Officer Lewis, Officer Galuezvskiy, Officer Ferraro, Captain Moise, and Former Chief Jennings in their individual and official capacities. Compl. The Court construes Plaintiff's Complaint to set forth claims for excessive force and municipal liability. On November 30, 2022, Defendants moved for summary judgment. ECF No. 45. Video footage of the incident was appended to the motion. ECF No. 46-3. Defendants argue Plaintiff's excessive force claim should be dismissed because Plaintiff's allegations are "so incredible it should be disregarded" and Defendants' use of force was objectively reasonable. *Id.* In the alternative, Defendants argue they are entitled to qualified immunity. Further, Plaintiff's federal municipal liability claim must fail as a matter of law. Finally, Former Chief Jennings and Officer Ferraro should be dismissed from this case because they did not participate in the incident. The Court considers this motion fully briefed.

**STANDARD OF REVIEW**

I. **Summary Judgment**

Per Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of

proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (internal citations and quotation marks omitted).

When one party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2008) (a court may "view[] the facts in the light depicted by the videotape"). "Incontrovertible evidence relied on by the moving party, such as relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007); *see also Scott*, 550 U.S. at 380-81.

## II. *Pro Se* Litigant

"When a pro se litigant is involved, the same standards for summary judgment apply, but 'the pro se litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F.Supp. 217, 220 (S.D.N.Y. 1995) (citation and internal quotation marks omitted)). "[S]pecial solicitude should be afforded pro se litigants generally, when confronted

with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Practically speaking, "[c]ourts read the pleadings, briefs, and opposition papers of *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Carter v. Ponte*, No. 17-CV-1830 (VSB), 2018 WL 4680995 at *4 (S.D.N.Y. Sept. 28, 2018) (collecting cases). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted). "This special solicitude is not unlimited, however, and does not 'relieve' a [party] of his or her 'duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 65 (S.D.N.Y. 2016) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Claims Against Officer Ferraro and Former Chief Jennings Must Be Dismissed.

"It is well-settled in this Circuit that the personal involvement of defendants in a constitutional violation is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "'Personal involvement' is defined as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts, rather than doing them him – or herself.'" *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). In this case, Officer Ferraro and Former Chief Jennings were not present and did not witness the incident. Plaintiff concedes as much. Def.'s 56.1 at ¶¶ 42-44; Compl. at 17. The Court finds Officer

7

Ferraro and Former Chief Jennings were not personally involved in the event giving rise to this suit, and must be dismissed.

## II. Defendants Did Not Use Excessive Force.

Plaintiff was a pretrial detainee during the relevant time period. As such, the Due Process Clause of the Fourteenth Amendment governs his allegation of excessive force. *Johnson v. City of N.Y.*, No. 18-CV-5623 (ALC), 2020 U.S. Dist. LEXIS 102870, at *10 (S.D.N.Y. June 11, 2020). In bringing an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 389 (2015). "This determination must be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . . and must account for the 'legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment" of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security[.]'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)) (internal citation omitted). In considering whether force was objectively reasonable or unreasonable, the court considers factors including: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Moreover, "claims for excessive force under the Fourteenth Amendment must involve force that is either 'more than de minimis' or 'repugnant to the conscience of mankind.'" *Lewis v. Huebner*, No. 17-CV-8101, 2020 WL 1244254, at *5 (S.D.N.Y. Mar. 16, 2020) (citing *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999)).

Summary judgment on an excessive force claim is proper "where undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening." *Henry v. Officer Pierce*, 1:11-CV-845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017) (internal citations and quotations omitted). "Absent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment." *Campbell v. Hanson*, 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019). "[W]here [Plaintiff's] testimony is contradicted by medical documents, his word alone is not enough to create a genuine dispute of material fact." *Rolkiewicz v. City of N.Y.*, 442 F. Supp. 3d 627, 643 (S.D.N.Y. 2020). The same is true of video footage. *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007); *see also Scott*, 550 U.S. at 380-81. Here, Plaintiff has reviewed the surveillance footage and has not sufficiently objected to its accuracy. In his supporting papers, Plaintiff claims the footage has been altered, and that the incident was not fully captured on video. Plaintiff also posits that the officers "blocked the camera so nobody could see[.]" Pl.'s Dep., at 70:16 – 72:20. There is no evidence that either is the case.

In this case, Plaintiff alleges the officers used excessive force when they assaulted him without reason. Plaintiff goes so far as to claim Officer Sylla used metal gloves to punch his head and neck, and Officer Lewis sexually assaulted Plaintiff while he was held down to the floor. Here, "the only evidence supportive of [Plaintiff's] injuries is his own testimony and complaint." *Rolkiewicz*, 442 F. Supp. at 642. The footage tells a drastically different story. When the officers first engaged Plaintiff, he appeared visibly agitated and aggressive. ECF No. 46-5 at 3. As he exited his cell, Plaintiff pushed Officer Sylla, and in response, Defendants moved to restrain Plaintiff. It was at that point that Plaintiff punched the left side of Officer Sylla's face with his right first. *Id.* In doing so, Plaintiff clearly posed an immediate threat to the safety of the officers.

Video evidence does not support Plaintiff's allegations of excessive force. There is no evidence that Defendants punched or assaulted him as alleged. The video depicts the officers using control holds as Plaintiff continued to resist and moved his arms and legs. Given the circumstances, Defendants' use of force to subdue Plaintiff was reasonable and *de minimis*. "[A] de minimis use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

Plaintiff sustained facial injuries during the encounter, but other than Plaintiff's incredible testimony, there is no evidence that these injuries were purposefully inflicted, or that Officer Sylla punched Plaintiff's face. Officer Sylla claims it was Plaintiff who repeatedly hit his own head against the ground and had to be restrained from doing so. The footage is not conclusive as to how Plaintiff obtained his facial injuries, but it decidedly does not support the allegation that Officer Syllla or any other officer punched Plaintiff and caused those injuries. "The fact that Plaintiff's head . . . hit the wall while he was . . . handcuffed, without additional facts, does not allege more than a *de minimis* amount of force used by Defendants." *Johnson*, 2020 WL 3100197, at *4 (granting defendants' motion to dismiss excessive force claim of incarcerated plaintiff). It is clear the officers used only the minimum amount of force necessary to subdue Plaintiff.

Therefore, the Court must grant Defendants summary judgment on Plaintiff's excessive force claim.

### III.   In the Alternative, Defendants Are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim.

Qualified immunity "shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). A

plaintiff seeking to defeat a qualified immunity defense must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Under New York law, "as is true of federal law, an officer's entitlement to qualified immunity . . . depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution." *Bancroft v. City of Mount Vernon*, 672 F.Supp.2d 391, 401 (S.D.N.Y. 2009).

A defendant may be entitled to qualified immunity if "it was not objectively unreasonable for him or her to believe that his use of such force was nevertheless lawful." *Jackson v. Tellado*, 236 F. Supp. 3d 636, 661 (E.D.N.Y. 2017). "Thus, while both the excessive force inquiry and the qualified immunity inquiry ask whether the officer's actions were 'objectively reasonable,' the qualified immunity inquiry goes on to ask whether any constitutional violation was clearly established." *Id.*

The Court must then determine if it was clearly established that Defendants' actions violated Plaintiff's Fourteenth Amendment rights. To determine if a right is clearly established, the Court must inquire if no reasonably competent officer could determine that the officers' actions to restrain Plaintiff were reasonable. *Brown v. City of N.Y.*, 862 F.3d 182, 190 (2d Cir. 2017). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*) (internal quotation marks omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case," and "officers are entitled to qualified immunity

unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks and citation omitted).

Here, Defendants argue they are entitled to qualified immunity in the alternative. The central question is whether Defendants' actions to restrain Plaintiff "violate clearly-established rights of which an objectively reasonable official would have known." *Thomas*, 165 F.3d at 142. Plaintiff does not cite case law that squarely governs the specific facts of this case to support his argument that Defendants' actions to restrain him after his violent outburst violated his clearly-established rights. "Here, the absence of precedent squarely governing the specific facts at issue entitles defendants to summary judgment." *Donohue v. Marsh*, No. 19CV207RPKRML, 2022 WL 4111025, at *5 (E.D.N.Y. Sept. 8, 2022), *appeal dismissed*, No. 22-2531, 2023 WL 2807273 (2d Cir. Mar. 16, 2023) (internal quotation marks and alterations omitted).

For the reasons stated above, Defendants' decision to restrain Plaintiff were objectively reasonable. Plaintiff posed a safety threat to Defendants. He was clearly the aggressor when he without warning pushed and subsequently punched Officer Sylla. Due to Plaintiff initiating physical contact against Officer Sylla, Defendants' decision to employ control holds to subdue and restrain Plaintiff and prevent possible further violence against the officers is shielded under qualified immunity. Plaintiff continued to move his arms and legs while on the floor and restrained by Defendants, and did not stop until he was handcuffed.

As such, the officers' actions are shielded by qualified immunity.

**IV. The Monell Claim Is Dismissed.**

A plaintiff seeking municipality liability under 42 U.S.C. § 1983 must show: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." *Aquino v. City of N.Y.*, 16-CV-1577 (GHW), 2017 U.S. Dist. LEXIS 10436,

at *8 (S.D.N.Y. Jan. 25, 2017). Monell "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993). At the threshold, Plaintiff has not identified with any specificity the alleged policy or practice at play which led to his injuries. Rather, Plaintiff makes conclusory allegations that municipal liability exists due to "practices of infringement on protected rights" in 9 South, and "ample forms of misconduct by the discriminatory presence of 'ESU' officers" dating back to August 2019. Compl. at 2. This is insufficient. A municipality is liable when its "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Similarly, Plaintiff has not properly demonstrated that a specific deficiency in the City's failure to train officers actually caused in his alleged injuries. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Plaintiff has "provid[ed] no admissible evidence to support [his] claim", "[n]or has he produced evidence to show a pattern of misconduct to suggest a municipal policy or custom." *Mercier v. Kelly*, No. 10-Civ. 7951 (ALC) (JCF), 2013 U.S. Dist. LEXIS 118106, at **20-22 (S.D.N.Y. April 30, 2013) *report & recommendation adopted* 2013 U.S. Dist. LEXIS 117837, (S.D.N.Y. Aug. 9, 2013). Plaintiff has failed to demonstrate the existence of a municipal policy.

"It is well-settled that a Monell claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." *Mastromonaco v. Cty. of*

*Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). For that reason, Plaintiff's Monell claim is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 45, is **GRANTED** in full. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**Dated: September 29, 2023**
       **New York, New York**                                  **ANDREW L. CARTER, JR.**
                                                                **United States District Judge**